## THE RUSSELL NO. 5.

## THE CAPTAIN JIM.

## THE SUNSHINE.

## HUGHES v. JAMES McWILLIAMS BLUE LINE.

### Nos. 15371, 15562, 15563, 15553.

District Court, E. D. New York.
Feb. 23, 1939.

576

Alexander, Ash & Jones and Edward Ash, all of New York City, for Newtown Creek Towing Co.

Macklin, Brown, Lenahan & Speer and Richard F. Lenahan, all of New York City, for McWilliams Blue Line.

Mahar & Mason and William J. Mahar, all of New York City, for Kenny Scow Corporation.

Lynch & Hagen, Anthony V. Lynch, and Henry C. Eidenbach, all of New York City, for James Hughes, owner of Scow Captain Jim.

Hill, Rivkins & Middleton and Thomas H. Middleton, all of New York City, for Charles Dreifus Co.

Foley & Martin and Christopher E. Heckman, all of New York City, for Zeller Marine Corporation.

GALSTON, District Judge.

By stipulation at the trial these various actions were tried together; and a motion was made that they be consolidated. Decision was reserved on the motion. The proof indicates that only one decision is needed for all of the cases arose out of the towage of two scows loaded with scrap iron. The McWilliams Blue Line had obtained the contract for the towage and in turn turned it over to the Newtown Creek Company. The motion to consolidate is therefore granted.

A petition of the Newtown Creek Towing Company for limitation of liability sets forth that it is the owner of the tug Russell No. 5; that the petitioner used due diligence to make the tug seaworthy and that she was in all respects seaworthy and fully manned and equipped; that on the afternoon of November 12, 1937 the tug took in tow, at Saybrook, Conn., two scows, Captain Jim and Sunshine, bound for New Haven, Conn. Both scows were laden with deck cargoes of scrap iron. The Captain Jim was the hawser scow. To her stern and made fast by means of her own lines, was the Sunshine. It is alleged that conditions were favorable for the voyage when the tug and tow left Saybrook, and that after they were on their way, wind and sea began to pick up, and that at a point off Branford Reef the lines between the two scows were lengthened by their masters. When the tug and tow left for Townshends Ledge at night, the wind had reached gale velocity with accompanying high sea and rain. It is alleged that as a result of such adverse weather conditions the hawsers between the tug and the hawser scow parted and were promptly joined together and the tug and tow continued ahead with the tow made fast upon the single 6 inch line. Early in the morning of November 13, 1937 the lines between the Captain Jim and the Sunshine parted and weather conditions were such as to make it impossible for the tug to recapture the Sunshine. That scow subsequently stranded in the vicinity of Milford Point. The tug, with the Captain Jim alone in tow, proceeded on its way until it arrived off the breakwater at the southerly end of New Haven Harbor, but the tug was able to make little if any headway, being carried off her course. The tug's anchor was then dropped. Weather conditions continuing to be bad the tug's anchor dragged and the tow was carried in a general westerly direction until the 6 inch hawser, running from the tug to the Captain Jim snapped and fouled in the tug's propellor. The Captain Jim stranded in the vicinity of Charles Island, off the Connecticut shore. The petition ascribes the damage to acts of God, perils of the sea, or the unseaworthy condition

of the scows and their tackle, and the petitioners claim exemption from liability, and in the event that liability is decreed against them, claim the benefits of the provisions of Sections 183–185 of Title 46 U. S. Code, 46 U.S.C.A. §§ 183–185.

Answers were filed to the petition by the various claimants alleging that the damage resulted through the fault of the petitioners and with their privity and knowledge. The claims filed were those of James Hughes, Inc., as owner of the Captain Jim; of Kenny Scow Corporation as the owner of the scow Sunshine; of Charles Dreifus Co. as the owner of the steel scrap laden on board the scow Sunshine. Libels having been filed against the James McWilliams Blue Line, Inc., by Kenny Scow Corporation as the owner of the Sunshine and by James Hughes, Inc., as the owner of Captain Jim, claims were filed by the James McWilliams Blue Line, Inc., against both the Newtown Creek Towing Co., as owner, and the Russell Bros., Inc., as charterer of the tug, Russell, No. 5.

The testimony discloses that while the Russell No. 5 was at Saybrook, her mate, Fieldly, telephoned his New York office and spoke to Captain McKay, chief dispatcher of the petitioner. Thereupon he received orders to tow the two scows, laden with scrap iron, from Saybrook to New Haven. The distance from Saybrook to New Haven is 27 miles in the open and wide waters of Long Island Sound. The certificate of inspection of the Department of Commerce of the United States, issued August 16, 1937, permits the vessel to navigate for one year the waters of the harbor of New York inside Rockaway Point and Sandy Hook Lighthouse to Eaton's Point and Peck's Ledge and tributaries thereto. The only importance that this certificate has in the case is that from it appears no indication that the vessel was to navigate outside the waters therein designated, as, for instance, as far east as New Haven and Saybrook.

That consideration raises the question that is perhaps decisive of the right to limitation of liability, for the most serious contention in opposition thereto is that the Russell No. 5 was not properly equipped with hawsers for the towage of two heavily laden scows through weather that might prevail in the month of November in the wide reaches of Long Island Sound.

The Russell No. 5 had two 6 inch hawsers of 45 fathoms in length which gave a towage from the stern of the tug to the head scow of about 40 fathoms. These hawsers were put out at their full length on passing the Saybrook breakwater. Apparently there were no emergency towing lines, though the tug was provided with three 5½ inch fifteen fathom lines and two 5½ inch twenty fathom lines which lines were intended for towage alongside. When the hawsers parted one line was made up from the center bit of the head scow, having a length of about 480 feet. It may be admitted that the 6 inch lines were regular New York Harbor equipment, but whether they were adequate in the particular circumstances may well be doubted. The most impressive testimony was that of Captain Allen, employed by the Moran Towing and Transportation Company, a company not involved in this proceeding. He did not insist that, as some of the claimants suggest, a hawser bridle should have been employed instead of the two single hawser lines, though he did say he would have used an intermediate hawser between the two scows under existing weather conditions. He condemned the use of two short hawsers of 45 fathoms because too much strain would be thrown first on one, then on the other hawser in weather such as prevailed. In other words single length hawsers of 45 fathoms fail to yield sufficient play for adverse weather conditions.

I think it reasonable to hold the petitioner to the requirement of the law that calls upon the tug to be equipped with lines adequate to meet the incidents of the voyage—those that could be reasonably anticipated. Car Float No. 4, D.C., 89 F. 877; The Robert H. Smith, D.C., 3 F.Supp. 531; Osterhoudt v. Hedger Transportation Co., D.C., 42 F.2d 561; The Britannia, D.C., 148 F. 495.

In addition to inadequacy of line equipment, the petition for limitation is opposed on various other grounds. It is claimed that she lacked sufficient power to control her tow, but in my judgment the proof does not sustain that contention. It is also asserted that she was at fault in failing to take any steps to see that the hawsers connecting the two scows were adequate. There again I think the proof fails because the hawsers between those two boats were new and apparently adequate for the purpose. Certainly they served up to the time that the hawsers between the tug and the Captain Jim parted. Nor

has it been proved that tugs in Long Island Sound should be equipped with barometers, though without a barometer the duty of the master to make inquiry about prospective weather conditions from available official sources seems to be indicated in this case. Nor have we yet reached the point of declaring that a radio receiving set for the waters of Long Island Sound should be a part of the tug's equipment. The T. J. Hooper, 2 Cir., 60 F.2d 737; Transmarine Transportation Corporation v. Cornell Steamboat Co., 2 Cir., 90 F.2d 626.

On the other hand the petitioner is not wholly happy in endeavoring to show that weather conditions at that time of the year and in that part of the Sound were unusual and that the hawsers parted because such weather could not reasonably be anticipated. According to the master of the tug, the hawsers parted when the wind was blowing only between 15 and 20 miles an hour, and the sea was not bad though the captain said it "had a nasty little short roll."

For the foregoing reasons the petition for limitation should be denied.

With reference to any other acts of negligence I think the most that can be charged to the Russell No. 5 is that no proper inquiry into expected weather conditions was made. Due weight may be given to the departure of Captain Bragg, with a tug of 650 horse power, 90 feet in length, from Saybrook at about 1 o'clock, taking in tow a light oil barge about 175 feet long. He had two hawsers from tug to barge and reached New Haven at 4:30 in the afternoon. Captain Bragg did not recall what the barometer readings were but said that when leaving Saybrook the sky was overcast and that was the only indication of a storm, and that he did not expect to run into one. His case, however, is different from that of the Russell No. 5, for the power of the Russell No. 5 was not much more than half that of his tug, and his tow was much lighter. Moreover it was not contemplated that the Russell No. 5 and her tow would make New Haven in less than six or seven hours.

The petition for liability is accordingly denied and the claimant may have a decree primarily against the owners and charterers of the Russell No. 5 and secondarily against the McWilliams Blue Line.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.